UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------x
PETER BODA,

           Plaintiff,

      -against-

DETECTIVE JOHN PHELAN, NEW YORK
CITY, and B.M.,

          Defendants.
--------------------------------x

**ORDER**

11-CV-00028 (KAM)

**MATSUMOTO, United States District Judge:**

### INTRODUCTION

On January 4, 2011, plaintiff Peter Boda
("plaintiff"), then represented by counsel, brought this action
against defendants New York City Police Department Detective
John Phelan and New York City (collectively, "the City
defendants") and defendant B.M, the mother of the minor
complainant.[1]  In the operative, amended complaint, plaintiff
alleges constitutional claims under 42 U.S.C. § 1983 for false
arrest and malicious prosecution, as well as state law claims
for negligence, defamation, and malicious prosecution.
Plaintiff's claims arise out of his March 13, 2009 arrest and
subsequent prosecution in state court for alleged crimes
involving B.M.'s minor daughter, H.B., for which plaintiff was
found not guilty by a jury verdict at trial.  Presently before

---

[1] In accordance with Chief Magistrate Judge Steven M. Gold's order of June 1,
2011, the names of certain persons involved in the case, including that of
defendant B.M., have been redacted.

the court are the City defendants' and B.M.'s motions for summary judgment, which the court has deemed unopposed, based on plaintiff's repeated failure to file any opposition despite being afforded multiple opportunities to do so. (*See* Order dated Nov. 1, 2013, ECF No. 93; Order dated Nov. 15, 2013, ECF No. 95; Order dated Nov. 25, 2013, ECF No. 97; Order dated Dec. 27, 2013.) For the reasons set forth below, defendants' motions are granted in their entirety.

## BACKGROUND

### I. Procedural History

On June 12, 2013, during a conference at which all parties were present by telephone, the court set a schedule for the briefing of summary judgment motions by the City defendants and defendant B.M. Plaintiff, proceeding *pro se*, was ordered to serve any opposition to the motions on defendants by October 15, 2013. (Minute Entry dated June 12, 2013.) After plaintiff failed to oppose the motions by October 15, the court granted Mr. Boda an extension, to November 15, 2013, and cautioned that, absent plaintiff's timely opposition, the motions would be deemed unopposed and summary judgment would likely be granted. (Order dated Nov. 1, 2013.) In a letter docketed November 14, 2013, plaintiff wrote to the court explaining that he wished to oppose the motions but was unable to do so due to his health. (ECF No. 94.)

2

In response, the court granted Mr. Boda until November
26, 2013 to provide the court with a letter from a licensed
medical doctor attesting to his medical condition (ECF No. 95);
however, the order, sent to the address Mr. Boda provided to the
court, was returned as undeliverable.  The undersigned again
granted Mr. Boda an extension until December 20, 2013 to respond
to the court's previous order or oppose the motions and
requested that counsel for the City defendants make efforts to
locate Mr. Boda.  (Order dated Nov. 25, 2013, ECF No. 97.)
Again, the court notified Mr. Boda that if he did not respond,
the motions would be deemed unopposed and likely granted.  (*Id.*)

Mr. Boda did not respond to the November 25, 2013
order, nor was counsel for the City defendants able to locate
him.  (*See* City Defs. Ltr. dated Dec. 23, 2013, ECF No. 100
(noting the City defendants' attempts to serve the court's
November 25, 2013 order on Mr. Boda at four different
addresses).)  After the undersigned identified two additional
mailing addresses and an email address for Mr. Boda in earlier
correspondence in the case, the court granted a final extension
to Mr. Boda, until January 14, 2014, to respond to the motions
and directed that the City defendants serve the court's previous
orders on Mr. Boda at the newly identified addresses.  (Order
dated Dec. 27, 2013.)  The City defendants did so, and Mr. Boda
began receiving alerts of filings in his case by email.  (*See*

City Defs. Ltr. dated Dec. 30, 2013, ECF No. 101.)

By January 27, 2014, Mr. Boda had not contacted the court or the defendants, and the court granted motions by the City defendants and B.M. to deem their motions for summary judgment to be unopposed. (ECF No. 104.)

On April 10, 2014, plaintiff wrote to the court updating his contact information and informing the court that he would be unable to continue with his case *pro se* due to illness.[2] Mr. Boda requested that the court send him the decision in the case. (ECF No. 112.) Mr. Boda verified with medical records that he has been suffering from an illness, and a representative of the facility where he is being treated has also provided confirmation. (ECF Nos. 112-1 and 113.)

In light of the previous opportunities the court granted plaintiff to respond to the summary judgment motions and Mr. Boda's own statement that he cannot prosecute this case, the court will continue to deem the summary judgment motions unopposed.

## II.  Undisputed Material Facts

The following facts are drawn from the City defendants' and B.M.'s respective statements made pursuant to

---

[2] Although Mr. Boda stated that he cannot continue in this case *pro se*, the court notes that he does not request appointment of an attorney in his latest letter and that plaintiff's two previous requests for appointment of counsel were denied by the undersigned and Chief Magistrate Judge Gold, respectively. (*See* ECF Nos. 83, 95.)  For the reasons stated in those previous orders, the court would deny any further request for appointment of counsel.

Local Civil Rule 56.1.  (B.M. R. 56.1 Stmt., ECF No. 106-3; City Defs. R. 56.1 Stmt., ECF No. 109.)  Local Civil Rule 56.1 requires that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served on the opposing party."  Local Civ. R. 56.1(c).  As explained above, plaintiff has not disputed the facts of the case as set forth by defendants and, therefore, those facts are deemed admitted.  In addition, Local Civil Rule 56.2 requires that notice be sent to a *pro se* party by the party moving for summary judgment, informing the *pro se* party of the need to submit evidence and follow the procedures outlined in Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1 to oppose the motion for summary judgment.  Defendants have complied with this requirement.  (ECF Nos. 106, 110.)

The undisputed facts of the case, supported by admissible evidence, are as follows.  In 2005, plaintiff met J.B. at a guitar store in Queens.  (City Defs. R. 56.1 Stmt. ¶ 8.)  Plaintiff was subsequently hired to give piano lessons to J.B.'s daughter, H.B., once a week.  (*Id.* ¶ 9.)  H.B. was between seven and eight years old at the time.  (B.M. R. 56.1 Stmt. ¶ 2.)

On March 6, 2009, Susan Chavin, H.B.'s teacher, reported to the New York State Office of Children and Family Services Abuse Hotline that H.B. told Ms. Chavin that she had been sexually abused by plaintiff. (B.M. R. 56.1 Stmt. ¶¶ 4-5; City Defs. R. 56.1 Stmt. ¶ 19.) A "Law Enforcement Referral" form was generated and sent by facsimile to defendant Detective Phelan, who worked at the Queens Child Abuse Squad of the New York City Police Department. (B.M. R. 56.1 Stmt. ¶¶ 6-7; City Defs. R. 56.1 Stmt. ¶¶ 16, 18, 22; *see also* B.M. Ex. 9; City Defs. Ex. F (copies of the Law Enforcement Referral form).) Detective Phelan created a Complaint Report and Complaint Follow-up Report documenting the receipt of the Law Enforcement Referral, and called B.M. to request that she and H.B. come to the police precinct the next day. (B.M. R. 56.1 Stmt. ¶ 7; City Defs. R. 56.1 Stmt. ¶¶ 20-21; *see also* City Defs. Exs. H, I (copies of the Complaint Report and Complaint Follow-Up Report).)

Also on March 6, 2009, B.M. and H.B. met then-Assistant District Attorney Elizabeth Dank ("ADA Dank") because H.B. was scheduled to testify at her father's criminal trial. (B.M. R. 56.1 Stmt. ¶ 8.) During this meeting, H.B. told ADA Dank that plaintiff had sexually abused her. (*Id.* ¶ 10; *see also* Dank Affirm. ¶ 2, B.M. Ex. 15.) ADA Dank informed the Special Victims Unit of the Queens District Attorney's Office of

H.B.'s statement. (B.M. R. 56.1 Stmt. ¶ 11-12.) B.M. was unaware of her daughter's allegations regarding plaintiff until after H.B. made statements to Ms. Chavin and ADA Dank. (B.M. R. 56.1 Stmt. ¶ 13; City Defs. R. 56.1 Stmt. ¶ 24; *see also* B.M. Affirm. ¶ 13, B.M. Ex. 2.)

The following day, March 7, 2009, B.M. and H.B. met with Detective Phelan at the Queens Child Abuse Squad office. (B.M. R. 56.1 Stmt. ¶ 15; City Defs. R. 56.1 Stmt. ¶ 22.) H.B. made a statement to Detective Phelan describing sexual abuse by plaintiff. (B.M. R. 56.1 Stmt. ¶ 15; City Defs. R. 56.1 ¶ 34.) Because he found H.B. to be credible, Detective Phelan informed Assistant District Attorney Lauren Parson ("ADA Parson") of H.B.'s allegations. (B.M. R. 56.1 Stmt. ¶ 16; City Defs. R. 56.1 Stmt. ¶¶ 36-38.) Detective Phelan was not aware that H.B. was being called to testify in a criminal case in which her father, J.B., was a defendant. (City Defs. R. 56.1 Stmt. ¶ 35.)

On March 12, 2009, H.B. and B.M. met with ADA Parson at the Queens Child Advocacy Center. (*Id.* ¶ 39.) Detective Phelan observed the conversation through a one-way mirror. (*Id.* ¶ 40.) At this meeting, H.B. reported that plaintiff sexually abused her during their piano lessons and provided details consistent with her earlier statement to Detective Phelan. (B.M. R. 56.1 Stmt. ¶ 23; City Defs. R. 56.1 Stmt. ¶ 41; *see also* City Defs. Ex. J (ADA Parson's March 12, 2009 "Special

7

Victims Early Case Enhancement Report," memorializing ADA Parson's conversation with H.B.).)

On March 13, 2009, Detective Phelan brought plaintiff to the police precinct, where plaintiff was read his *Miranda* rights. (City Defs. R. 56.1 Stmt. ¶ 45-47.) Mr. Boda was subsequently arrested and charged with a course of sexual conduct against a child in the first degree and acting in a manner injurious to a child under seventeen years old. (*Id.* ¶ 53, Ex. K (Arrest Report).) Although plaintiff stated during the interview that H.B.'s accusations were a "conspiracy of B.M.'s to get even with" J.B., Detective Phelan was not aware that there was a custody dispute between B.M. and J.B. or a family court matter. (*Id.* ¶¶ 26-27, 48, 51-52.) Shortly after the arrest, Ms. Chavin called Detective Phelan to report the disclosures H.B. had made to her regarding the alleged sexual abuse. (*Id.* ¶ 56.)

Plaintiff was arraigned on March 14, 2009, and indicted on March 18, 2009 on charges of a course of sexual conduct against a child in the first degree and endangering the welfare of a child. (*Id.* ¶¶ 58, 60, Ex. M (Grand Jury Indictment).) The trial court denied subsequent motions to dismiss the indictment. (*Id.* ¶¶ 62-63, Exs. N, O.) Following a jury trial, during which H.B. testified, plaintiff was found not guilty of all charges. (*Id.* ¶ 65, Ex. P (May 4, 2011

Certificate of Disposition).)

During the investigation, arrest and trial of
plaintiff, B.M. did not state that she had first-hand knowledge
of H.B.'s accusations, nor do Detective Phelan or ADA Parson
recall B.M. stating that, "Peter Boda licked H.B.'s vagina and
touched her lap." (B.M. R. 56.1 Stmt. ¶¶ 24-27.) B.M. was not
aware of H.B.'s accusation against plaintiff until she was
advised by Detective Phelan, after the investigation of
plaintiff was commenced. (*Id.* ¶¶ 13, 14, 17.)

**DISCUSSION**

Defendants have moved for summary judgment on all of
plaintiff's claims in the Amended Complaint, which are as
follows: federal claims pursuant to 42 U.S.C. § 1983 alleging
false arrest and malicious prosecution, as well as state law
claims of negligence and defamation against the City defendants,
and claims of malicious prosecution and defamation against B.M.
The court will set forth the standard for deciding a motion for
summary judgment and then will address each of plaintiff's
claims in turn.

**I.    Summary Judgment Standard**

The court must grant summary judgment "if the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The substantive law of the claim governs materiality, because "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248 (citation omitted).

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). This is so even where a motion for summary judgment is unopposed. *See Amaker v. Foley*, 274 F.3d 677, 680-81 (2d Cir. 2001). Accordingly, the Second Circuit has held that if a *pro se* plaintiff fails to oppose a defendant's motion for summary judgment, the district court may grant defendant's motion if (1) the *pro se* plaintiff has received adequate notice that failure to file any opposition may result in dismissal of the case; and (2) the court is satisfied that "the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (internal citation and quotation marks omitted).

As discussed above, plaintiff received ample notice that if he did not respond to defendants' motion papers, the summary judgment motions would be deemed unopposed, and, as a result, that his case could be dismissed.  Accordingly, the court evaluates whether the undisputed facts offered by defendants demonstrate that they are entitled to judgment as a matter of law.

## II.  Section 1983 Claims

Plaintiff brings false arrest and malicious prosecution claims against Detective Phelan, pursuant to 42 U.S.C. § 1983 ("section 1983").[3]  (Am. Compl. ¶¶ 5-15.) Specifically, plaintiff alleges that Detective Phelan knew plaintiff had been accused of the sexual assault of H.B. solely as a means of influencing the custody dispute between H.B.'s parents and that Detective Phelan nonetheless arrested plaintiff without probable cause and provided information he knew to be false during the prosecution of plaintiff.  (Am. Compl. ¶¶ 10-11.)

---

[3] The Amended Complaint does not seek to hold the City of New York liable for plaintiff's false arrest and malicious prosecution claims. (*See generally* Am. Compl. ¶¶ 5-15.)  In order to bring suit against the City for the acts of Detective Phelan, plaintiff would be required to plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (internal citation omitted); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)).  There are no such allegations regarding a City policy or custom in the Amended Complaint, and, accordingly, even assuming plaintiff intended to bring claims against the City for false arrest and malicious prosecution, they would be unsuccessful and are dismissed.

In relevant part, section 1983 provides that:

> Every person, who under color of any statute . . .
> subjects, or causes to be subjected, any citizen of
> the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393–94 (1989) (internal quotation omitted).  "To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir. 1999).

There is no dispute that Detective Phelan was acting under color of state law as a New York City Police Department employee during the investigation of H.B.'s complaint, plaintiff's arrest and plaintiff's subsequent criminal trial. (*See* Am. Compl. ¶ 5.)  Instead, the City defendants argue that plaintiff was not deprived of any constitutional right.  For the reasons set forth below, the court concurs, and plaintiff's section 1983 claims are dismissed.

12

### a. False Arrest

Plaintiff brings a claim for false arrest against
Detective Phelan, pursuant to 28 U.S.C. § 1983.  A plaintiff
alleging false arrest "must show . . . that the defendant
intentionally confined him without his consent and without
justification." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.
1996).  "The existence of probable cause to arrest constitutes
justification and is a complete defense to an action
for false arrest." *Jenkins v. City of New York,* 478 F.3d 76, 84
(2d Cir. 2007) (internal quotation and citation omitted).

Probable cause to arrest exists "when the officers
have knowledge or reasonably trustworthy information of facts
and circumstances that are sufficient to warrant a person of
reasonable caution in the belief that the person to be arrested
has committed . . . a crime." *Weyant,* 101 F.3d at 852
(collecting cases).  In undertaking this analysis, the court
looks to "whether the officers' actions are 'objectively
reasonable' in light of the facts and circumstances confronting
them [at the time of the arrest], without regard to their
underlying intent or motivation." *Bryant v. City of New York*,
404 F.3d 128, 136 (2d Cir. 2005) (quoting *Graham*, 490 U.S. at
397).  A victim's statement is sufficient to establish probable
cause "unless circumstances raise doubt as to the person's
veracity." *Carthew v. Cnty. of Suffolk*, 709 F. Supp. 2d 188,

197 (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 69-70
(2d Cir. 2001)); *see also Martinez v. Simonetti*, 202 F.3d 625,
634 (2d Cir. 2000) (analyzing probable cause in the context of
an officer's qualified immunity defense and noting that "it is
well-established that a law enforcement official has probable
cause to arrest if he received his information from . . . the
putative victim or eyewitness."). The question of whether or
not probable cause existed may be determinable as a matter of
law where there is no dispute as to the pertinent events and the
knowledge of the officer or officers. *See Weyant,* 101 F.3d at
852 (citation omitted).

The court finds, as a matter of law, that Detective
Phelan had probable cause for arresting plaintiff, and grants
the City defendants' motion on the false arrest claim. H.B.'s
statements to her teacher and to Detective Phelan alleging
sexual abuse by plaintiff were sufficient to establish probable
cause because Detective Phelan had no reason to doubt the
veracity of those statements. On the contrary, Detective Phelan
found H.B. to be credible and her statements to be specific,
detailed and consistent with other cases of sexual abuse he had
investigated. (City Defs. R. 56.1 Stmt. ¶¶ 37, 43.) He was
also unaware of the family and criminal court cases involving
J.B., which plaintiff argues should have called into question
H.B.'s reliability. (*See id.* ¶¶ 35, 51-52.) Accordingly, based

14

on the undisputed facts before the court, Detective Phelan had
probable cause to arrest plaintiff.  The false arrest claims
against Detective Phelan are therefore dismissed.

### b. Malicious Prosecution

In addition to his false arrest claim, plaintiff
alleges that the criminal case against him constituted malicious
prosecution in violation of section 1983.  To succeed on
a section 1983 claim of malicious prosecution, the plaintiff
"must show some post-arraignment deprivation of liberty that
rises to the level of a constitutional violation." *Singer v.
Fulton Cnty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995).  The
elements of a malicious prosecution claim brought under Section
1983 are substantially the same as in malicious prosecution
claims brought under New York law.  *Conway v. Village of Mt.
Kisco,* 750 F.2d 205, 214 (2d Cir. 1984).  To prevail upon a
claim of malicious prosecution under New York law, a plaintiff
must demonstrate: (1) the initiation or continuation of a
criminal proceeding against plaintiff; (2) termination of the
proceeding in plaintiff's favor; (3) lack of probable cause for
commencing the proceeding; and (4) actual malice as a motivation
for defendant's actions.  *Kinzer v. Jackson*, 316 F.3d 139, 143
(2d Cir. 2003).

Like claims of false arrest, probable cause is a
complete defense to malicious prosecution claims.  *Manganiello*

*v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2003) (citing *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'" *Johnson v. Constantellis*, 221 Fed. App'x 48, 50 (2d Cir. 2007) (quoting *Kinzer*, 316 F.3d at 144). Moreover, a grand jury's indictment "creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino*, 331 F.3d at 72 (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983)) (emphasis in original).

The City defendants do not dispute that plaintiff experienced a post-arraignment deprivation of liberty, or that the criminal proceeding initiated against plaintiff was terminated in his favor. Defendants do, however, demonstrate that there was probable cause for plaintiff's prosecution. Accordingly, the court need not reach whether Detective Phelan's actions were motivated by malice. As previously discussed, Detective Phelan had probable cause to arrest plaintiff. There is no record of any intervening fact that would have called that probable cause into question. Further, there are no facts in the record that would undermine the presumption of probable cause as a result of the grand jury's indictment. *See Brandon*

*v. City of New York*, 705 F. Supp. 2d 261, 273 (S.D.N.Y. 2010)
(noting that "where a plaintiff's only evidence to rebut the
presumption of the indictment['s] probable cause] is his version
of events, courts will find such evidence to be nothing more
than mere conjecture" (internal citation and quotation marks
omitted)).

Accordingly, the court finds that probable cause
existed for the prosecution of Mr. Boda, and that plaintiff
cannot, therefore, state a claim for malicious prosecution.
Plaintiff's claims pursuant to section 1983 are dismissed.[4]

### III. State Law Claims

Plaintiff also brings several state law causes of
action.[5]  He alleges that defendant New York City was negligent
in its hiring and supervision of Detective Phelan and that
Detective Phelan was negligent in his investigation of
plaintiff.  (Am. Compl. ¶¶ 16-21.)  In addition, he alleges that
B.M. is liable for the state law tort of malicious prosecution

---

[4] Because the court has granted summary judgment to the City defendants on
plaintiff's false arrest and malicious prosecution claims, the court need not
address Detective Phelan's qualified immunity defense.

[5] The court exercises jurisdiction over plaintiff's state law claims pursuant
to 28 U.S.C. § 1367(a) ("the district courts shall have jurisdiction over all
other claims that are so related to claims in the action within such original
jurisdiction that they form part of the same case or controversy").  Although
a court may decline to exercise supplemental jurisdiction over state law
claims when it has "dismissed all claims over which it has original
jurisdiction," § 1367(c)(3), it is within the court's discretion to retain
jurisdiction in the interest of "judicial economy, convenience, fairness, and
comity." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.
2006) (internal citation omitted).  In light of the advanced stage of this
case and the settled nature of the state law claims before this court, the
court finds that judicial economy, convenience and fairness to the parties
are best served by retaining jurisdiction.

(Am. Compl. ¶¶ 23-27) and that both Detective Phelan and B.M. made defamatory statements about plaintiff (Am. Compl. ¶¶ 28-33).

As a preliminary matter, the court notes that, under New York law, in order to assert state law claims against a municipality or its employees, a plaintiff must file a notice of claim within ninety days of the claim's accrual. *See, e.g.*, *Eberle v. Town of Southampton*, 985 F. Supp. 2d 344, 347-48 (E.D.N.Y. 2013) (citing N.Y. Gen. Mun. Law § 50-e and collecting cases). New York law strictly construes notice of claim requirements, and federal courts must apply this rule in exercising supplemental jurisdiction over state law claims. *Eberle*, 985 F. Supp. 2d at 348-49; *AT&T Co. v. N.Y.C. Dep't of Human Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990).

Although the plaintiff alleges in his Amended Complaint that a notice of claim was filed (Am. Compl. ¶ 2), he admitted at his deposition that he did not know if a claim was filed, and counsel for the City defendants avers that the City never received the notice of claim. (City Defs. 56.1 ¶ 4 and Ex B.) Accordingly, plaintiff's state law claims against the City defendants are dismissed based on plaintiff's failure to satisfy this procedural prerequisite. For the reasons set forth below, however, even had plaintiff filed a timely notice of claim, the court would grant summary judgment in favor of all defendants

because plaintiff's state law claims are either time-barred or unsustainable.

### a. Negligence Claims

Plaintiff alleges that the City of New York was negligent in hiring and supervising Detective Phelan and that Detective Phelan was negligent in investigating the allegations against plaintiff prior to arresting plaintiff.  (Am. Compl. ¶¶ 17-18.)  These claims are time-barred, and, in any event, meritless.

Under New York law, negligence claims against a municipality and its employees must be commenced within one year and ninety days after the event that gave rise to the claim. N.Y. Gen. Mun. Law § 50-i(1)(c).  The instant case was filed on January 4, 2011, approximately one year and ten months after Mr. Boda's arrest on March 13, 2009.  (*See* Am. Compl. ¶ 6.) Accordingly, plaintiff's claims against the City defendants are untimely and must be dismissed.

Even if they were timely filed, the negligence claims against the City defendants are meritless.  As the City defendants' counsel notes, "[u]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution."  *Burbur v. Inc. Village of Garden City*, 961 F.

Supp. 2d 462, 474 (E.D.N.Y. 2013) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also McSween v. Edwards*, 91 F. Supp. 2d 513, 525 (E.D.N.Y. 2000) ("New York law prohibits recovery under a general theory of negligence when the traditional remedies of false arrest and imprisonment are available." (internal citation and quotation marks omitted)). Because plaintiff's negligence claim against Detective Phelan is based upon the circumstances surrounding plaintiff's arrest, the negligence claim must be dismissed.

Plaintiff's claim against the City for negligent hiring and supervision of Detective Phelan is similarly meritless. The court has found that Detective Phelan did not engage in false arrest and malicious prosecution; therefore, the City cannot be held liable for its hiring and training of Detective Phelan. *See Zaniewska v. City of New York*, No. 11-CV-2446, 2013 WL 3990751, at *11 (E.D.N.Y. Aug. 5, 2013) and *Kurschus v. Painewebber, Inc.*, 16 F. Supp. 2d 386, (S.D.N.Y. 1998) (dismissing negligent training and supervision claims against municipalities where no cognizable claim against the defendant-police officers existed).

### b. Defamation Claims

Plaintiff brings defamation claims against the City defendants, as well as defendant B.M. Specifically, plaintiff alleges that, on March 13, 2009, Detective Phelan contacted

plaintiff's brother and informed him that "plaintiff had been 'arrested for raping a girl under seventeen years old.'" (Am. Compl. ¶ 28.) Plaintiff also alleges that B.M. stated to Detective Phelan on March 9, 2009 and ADA Parson on an unspecified date that "Peter Boda licked H.B.'s vagina and touched her lap." (Am. Compl. ¶ 32.)

Plaintiff's claims fail both because they are time barred and because they are not supported by any evidence in the record. Under New York law, the statute of limitations for a defamation claim is one year and accrues when the allegedly defamatory statement is published. *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003) (citing N.Y. C.P.L.R. § 215(3)). The statute of limitations for a defamation claim filed against the City of New York or its employees is one year and ninety days. *Nelligar v. Clark*, No. 10-CV-743, 2012 WL 6204226, at *10 (S.D.N.Y. Dec. 7, 2012) (citing N.Y. Gen. Mun. Law §§ 50-i, 50-k; *Klein v. City of Yonkers*, 53 N.Y.2d 1011, 1012-13 (1981)). The alleged statements by B.M. and Detective Phelan were made over one year and ten months before the complaint was filed in this case. The defamation claims are therefore untimely and are dismissed.

Plaintiff's defamation claims also fail because there is no evidence in the record that the allegedly defamatory statements were in fact made. *See Chandok v. Klessig*, 632 F.3d

803, 814 (2d Cir. 2011) ("New York law allows a plaintiff to recover for defamation by proving[, *inter alia*,] that defendant published to a third party a defamatory statement of fact."); *see also Albert v. Loksen*, 239 F.3d 256, 266 (2d Cir. 2001) ("When challenged on a motion for summary judgment, a plaintiff may not rely solely on . . . conclusory allegations that the slanderous statement was made." (citation omitted)). Through the presentation of admissible evidence, the City defendants and B.M. have denied that they ever made the statements discussed in plaintiff's complaint, and plaintiff has not opposed those denials, or presented any contrary evidence. (*See* B.M. 56.1 ¶¶ 24-27; City 56.1 ¶¶ 66-67.) Accordingly, summary judgment is granted to all defendants on plaintiff's defamation claims.

### c. Malicious Prosecution Under New York Law

Plaintiff brings a claim of malicious prosecution against defendant B.M. pursuant to New York state law. As discussed previously in this Memorandum and Order, the elements of a state law tort of malicious prosecution are as follows: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions. *Kinzer*, 316 F.3d at 143. As also previously discussed, a presumption of probable cause attaches to the grand jury's

indictment that may only be disturbed by "evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other . . . conduct undertaken in bad faith." *Savino*, 331 F.3d at 72 (internal quotation marks omitted).

The record is devoid of any evidence that B.M. engaged in fraud or perjury in testifying in front of the grand jury. In fact, as counsel for B.M. notes, there is no allegation in the complaint that B.M. perjured herself during her grand jury testimony. In light of the lack of any evidence to overturn the presumption of probable cause underlying the grand jury's verdict, plaintiff's malicious prosecution claim against B.M. is without merit. Summary judgment is granted in favor of B.M. on plaintiff's state law malicious prosecution claim.

## CONCLUSION

For the foregoing reasons, the court grants defendants' summary judgment motions in their entirety, both as to plaintiff's federal claims and plaintiff's state law claims. Accordingly, plaintiff's claims are dismissed with prejudice. The Clerk of Court is respectfully requested to enter judgment

in favor of all defendants and to send a copy of this Memorandum and Order and the Judgment to plaintiff at his most recent address, which is reflected on the docket sheet, and to close the case.

**SO ORDERED.**

Dated:     Brooklyn, New York
           July 30, 2014

                                    _____/s_____
                                    KIYO A. MATSUMOTO
                                    United States District Judge